# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **INEZ NIEVES**, *et al.*, | : |
| | : |
| *Plaintiffs*, | : Case No. 1-24-cv-01861 |
| | : |
| v. | : **JUDGE DAN AARON POLSTER** |
| | : |
| **LORAIN COUNTY,** *et al.*, | : |
| | : |
| *Defendants*, | : |
| | : |
| and | : |
| | : |
| **THE STATE OF OHIO,** | : |
| | : |
| *Intervenor-Defendant.* | : |

## THE STATE OF OHIO'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Defendant-Intervenor, the State of Ohio, hereby moves, pursuant to Fed.R.Civ.P. 12(b)(1), and respectfully requests that this Court dismiss Plaintiffs' claims for lack of subject-matter jurisdiction. As explained in the attached Memorandum in Support, dismissal is proper because Plaintiffs' claims are not ripe for review.

Respectfully submitted,

**DAVE YOST**
Attorney General of Ohio

*/s/ Chad M. Kohler*
**CHAD M. KOHLER (0074179)**
Principal Assistant Attorney General
30 E. Broad St., 26th Floor
Columbus, Ohio 43215
Telephone: (614) 466-5861
Fax: (866) 514-0279
Chad.Kohler@OhioAGO.gov
*Counsel for Defendant-Intervenor, the State of Ohio*

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION**

In *Tyler v. Hennepin Cty.*, 598 U.S. 631, 639-40 (2023), the U.S. Supreme Court held that a Minnesota county violated the Takings Clause of the Fifth Amendment when it sold a tax-foreclosed property, satisfied the outstanding tax debt, but kept the remaining surplus funds. Under *Tyler*, any surplus that remains after taxes and penalties are satisfied belongs to the prior property owner, not the government.

Plaintiffs attempt to piggyback off *Tyler* in this putative class action. They allege that their constitutional rights under the Fifth and Eighth Amendments to the U.S. Constitution were violated when Lorain County sold their tax-foreclosed property for an amount more than the outstanding tax liability but kept the surplus. Plaintiffs seek damages pursuant to 18 U.S.C. § 1983 on behalf of themselves and others similarly situated in Lorain County.

Plaintiffs' takings claim under the Fifth Amendment is not ripe for review. Under longstanding precedent, the government "does not violate the Takings Clause until it refuses to compensate the owner." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir.2017) (internal quotations and citations omitted). It is for this reason that "[a] federal court may hear a takings claim only after…the plaintiff has received a final decision from the relevant government actor." *Id*. at 818 (internal quotation and citations omitted).

While Plaintiffs' Complaint (Doc#: 1) makes no reference to it, the fact is that Ohio law provides a statutory process for Plaintiffs to receive the money that they seek. Under R.C. 5723.11, Plaintiffs have until July 24, 2025 – one year from the date they allege that the property was sold – to make a demand to the County Treasurer for any surplus. R.C. 5723.11 then requires the Treasurer to either pay the surplus to Plaintiffs, or file an interpleader if the Treasurer is not

2

satisfied that Plaintiffs are legally entitled to the surplus or if there are multiple claimants to the surplus.

In their Complaint, Plaintiffs do not assert any allegations relative to R.C. 5723.11. They do not allege that they made any demand to the County Treasurer for the surplus. They do not allege that the Treasurer refused to pay them. They do not allege that the Treasurer otherwise failed to follow the requirements of R.C. 5723.11. And most critically for ripeness, Plaintiffs do not allege that the Treasurer reached any final decision. Absent a final decision by the Treasurer, Plaintiffs' takings claim is not ripe for review.

Plaintiffs' excessive fines claim under the Eighth Amendment similarly fails. Quite simply, there can be no excessive fine in violation of the Eighth Amendment if no fine has been imposed. Until Plaintiffs can allege that the County Treasurer denied them the surplus funds under R.C. 5723.11 to which they may be entitled, Plaintiffs' excessive fines claim is not ripe for review. This Court lacks subject-matter jurisdiction until such factual issues are presented, and dismissal is therefore proper.[1]

## II.  SUMMARY OF PLAINTIFFS' RELEVANT ALLEGATIONS

Plaintiffs, Inez Nieves and Betsy Ramos, owned a modest 100-year-old home located in downtown Lorain, Ohio, which they purchased in about 2006. Complaint, ¶¶ 18-19. It is not clear from their Complaint if Plaintiffs ever resided at the property. Plaintiffs state that the annual

---

[1] This Motion does not address the merits of Plaintiffs' claims or whether they fail to state a claim under Fed.R.Civ.P. 12(b)(6). Since this Court lacks subject-matter jurisdiction, it is not necessary for the Court to delve into such questions now. *See, e.g.*, *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir.2012) ("[A] federal court must dismiss any claim for which it lacks jurisdiction without addressing the merits."); *Wayside Church*, 847 F.3d at 816 (noting that a Rule12(b)(6) motion becomes moot if the court lacks subject-matter jurisdiction) (citation omitted).

property taxes for the property "were modest, only $1,453.14 in 2022." *Id*. at ¶ 21. Plaintiffs apparently did not pay property taxes for many years. By 2022, Plaintiffs owed over $16,000 in back taxes. *Id*. at ¶ 22.

In March 2022, Lorain County initiated tax foreclosure proceedings. *Id*. After two attempted public auctions of the property pursuant to R.C. Chapter 5721 were unsuccessful, the property became subject to tax forfeiture and was forfeited to the state pursuant to R.C. Chapter 5723. *Id*. at ¶¶ 23-24. Plaintiffs attach to their Complaint, as Exhibit 6, a copy of the Judgment Entry for Forfeiture of Real Estate to the State of Ohio that was filed with the common pleas court in connection with the tax forfeiture. The Judgment Entry confirms that the property was forfeited under R.C. 5723.01(A)(1), which mandates that tax foreclosed property that does not sell after two public auction attempts "shall be forfeited to the state or to a political subdivision, school district, or county land reutilization corporation." Ultimately, the Lorain County Land Reutilization Corporation (the "Land Bank") took legal title to Plaintiffs' property. Complaint, ¶ 34.

On July 24, 2024, the Land Bank sold the property to a third-party, All-American Home Renovations LLC, for an amount that Plaintiffs allege was greater than the tax delinquency. Complaint, ¶¶ 36, 39. The sales price is not specified in the Complaint. Plaintiffs allege that an unlawful taking occurred when the Land Bank "issued a deed transferring the entire property to All American Home Renovations LLC without paying the difference between the sale price and the taxes owed to the prior owners." *Id*. at ¶ 40. The Complaint does not allege specifically whether it was Lorain County or the Land Bank that kept the proceeds.

Throughout the Complaint, Plaintiffs treat Lorain County and the Land Bank as if they are synonymous. For example, Plaintiffs allege that "Lorain County exercises its policy discretion to sell land from its land bank according to its land disposition policy and to keep the full proceeds

4

without any return of the surplus value to the property owner." *Id*. at ¶ 42. While it is not stated in the Complaint, it appears that the Land Bank is a community improvement corporation organized under Revised Code Chapter 1724, and thus is a separate legal entity. Plaintiffs assert legal claims only against Lorain County and its County Auditor, who they allege administers the County's tax forfeiture policies. *Id*. at ¶¶ 12-14. Plaintiffs do not assert any legal claims against the Land Bank or the County Treasurer.

Plaintiffs note that if the property had successfully sold at one of the two public auctions that were attempted pursuant to R.C. Chapter 5721, then "they would have been entitled by law to the difference between the sale price and the taxes owed." *Id*. at ¶ 40 (citing R.C. 5721.20).[2] However, Plaintiffs ignore that similar statutory rights exist under R.C. 5723.11 where, as here, property that is forfeited to the state pursuant to R.C. Chapter 5723 is later sold.

### III. OHIO'S TAX-FORFEITURE STATUTE PROVIDES A PROCESS FOR PLAINTIFFS TO RECEIVE THE SURPLUS FROM THE COUNTY TREASURER AND THUS SATISFIES THE PROCEDURAL FAIRNESS PRINCIPLES SET FORTH IN *TYLER*

Ohio's tax-forfeiture statute provides a process for former homeowners to receive the surplus that remains after a tax-forfeited property is sold and the tax liability is satisfied. Specifically, R.C. 5723.11 provides, in relevant part:

> If any forfeited lands are sold for a greater sum than the amount of the tax, assessment, penalty, interest, and costs of sale, the county auditor shall charge the county treasurer separately in each case, in the name of the supposed owner, with the excess above such amount. *The treasurer shall retain such excess in the treasury for the proper owner of the forfeited lands, and upon demand by such*

---

[2] In *FIG As Custodian for FIG Ohio18, LLC v. Lynch*, 8th Dist. Cuyahoga No. 113584, 2024-Ohio-3196, ¶ 34, the appeals court held that R.C. 5721.20 "aligns with the procedural fairness principle endorsed in *Tyler* because it entitles homeowners to any excess proceeds from the foreclosure sale." To date, it does not appear that any Ohio court has issued a ruling on whether R.C. 5723.21 likewise satisfies the procedural fairness principles set forth in *Tyler*.

5

> *owner, within one year from the day of sale, shall pay the excess to the owner*.

(Emphasis added.).

"Under R.C. 5723.11, the 'proper owner' is the former owner of the property before its forfeiture to the state under R.C. Chapter 5723. *See* Taylor v. Monroe, 92 Ohio App. 499, 502 03, 109 N.E.2d 673 (Cuyahoga County 1951) (acknowledging that it is the 'delinquent land owner' that can claim the excess under G.C. 5757, predecessor to R.C. 5723.11)." 2015 Ohio Atty.Gen.Ops. No. 2015-005, p. 18, fn. 24. *See also Cadiz v. Fledderus*, 7th Dist. Harrison No. 08 HA 4, 2009-Ohio-3054, ¶ 19 (stating that under R.C. 5723.11 "the former owner is provided with a right to redeem or to extra proceeds after sale and because the state is only permitted to sell the land in order to receive its delinquent taxes, there are statutory limits to the state's title, right, claim, and interest"); *Smith v. Wagner*, 2d Dist. Montgomery No. 13762, 1994 Ohio App. LEXIS 659, at *7 (Feb. 25, 1994) (noting that sales which maximize the greatest amount of money possible will benefit the former owner of forfeited land by maximizing the amount they may receive under R.C. 5723.11).

As such, under R.C. 5723.11, Plaintiffs have until July 24, 2025 – one year from the date they allege the property was sold – to make a demand to the County Treasurer for any surplus. After such demand is made, the statute then provides for the following process:

> If the treasurer, upon demand, is not fully satisfied as to the right of the person demanding to receive such excess sum or if there are several different claimants, the treasurer shall commence a civil action by filing a petition of interpleader in the court of common pleas of the county where the land was sold, wherein the treasurer shall make the person claiming the excess, and the state, defendants, and the action shall proceed as other civil actions. The costs of the proceedings shall be paid by the person claiming the excess, as the court orders. The prosecuting attorney shall prosecute the action, in behalf of the treasurer.

*Id*.

Just as Ohio law provides a process for Plaintiffs to demand the surplus, Ohio law also provides Plaintiffs with a remedy if the County Treasurer does not follow R.C. 5723.11 – they may file a mandamus action against the Treasurer. *See Edgington v. Newman*, 4th Dist. Adams No. 11CA917, 2012-Ohio-4962, ¶ 9 (noting that where a county treasurer rejected a party's demand for excess funds under R.C. 5723.11 but did not file an interpleader as mandated under the statute, then the party could have filed a mandamus action to compel the treasurer to follow the statute). As discussed below, while Plaintiffs are not required to exhaust state court remedies before pursuing a 1983 action in federal court, Plaintiffs must allege that the Lorain County Treasurer reached a final decision for their takings claim to be ripe for review. Plaintiffs make no such allegation.

Moreover, given Plaintiffs' strong reliance on *Tyler v. Hennepin County* in crafting their claims, it must be noted that the operative statute in *Tyler* is readily distinguishable from R.C. 5723.11. Indeed, R.C. 5723.21 plainly satisfies the procedural fairness principles set forth in *Tyler*.

In *Tyler*, a 94-year-old widow owed $15,000 to the local county in unpaid property taxes, interest, and penalties. 598 U.S. 631 at 635. The county initiated tax foreclosure proceedings, took possession of the property, and sold it for $40,000. *Id*. The tax liability was extinguished, and the County kept the remaining money for its own use. *Id*. The plaintiff filed a putative class action suit against the county, alleging that the county unconstitutionally kept the excess money from the sale of her former property in violation of the Fifth and Eighth Amendment. *Id*. at 635-36.

Applying the Rule 12(b)(6) standard, the Court held that the plaintiff plausibly asserted a federal Takings Clause claim because the Minnesota statute at issue "provide[d] no opportunity for the taxpayer to recover the excess value; once absolute title has transferred to the State, any excess value always remain[ed] with the State." 598 U.S. at 632. The Court contrasted

Minnesota's statutory scheme, which it found violated the Takings Clause, with a "New York City ordinance [that] did not 'absolutely preclude[e] an owner from obtaining the surplus proceeds of a judicial sale,' but instead simply defined the process through which the owner could claim the surplus…." *Id*. (quoting *Nelson v. City of New York*, 352 U.S. 103, 110 (1956) (finding no Takings Clause violation). "New York City's ordinance, in comparison, permitted the owner to recover the surplus but required that the owner have 'filed a timely answer in [the] foreclosure proceeding, asserting his property had a value substantially exceeding the tax due.'" *Id*.

Here, by contrast, R.C. 5723.11 provides an opportunity for the taxpayer to recover the excess value and thus aligns with *Tyler*.

## IV. THIS COURT LACKS SUBJECT-MATTER JURISDICTION

### A. The 12(b)(1) Standard for Dismissal

"A party may move to dismiss claims alleged against it for lack of subject matter jurisdiction by filing a motion under Rule 12." *Patterson v. United States*, No. 3:19-cv-1704, 2020 U.S. Dist. LEXIS 171349, at *2 (N.D. Ohio Sep. 18, 2020) (citing Fed. R. Civ. P. 12(b)(1)); *see also New Heights Farm I, LLC v. Great Am. Inc. Co.*, 2024 U.S. App. LEXIS 25851, at *10 (6th Cir. Oct. 15, 2024) ("Rule 12(b)(1) applies to dismissals premised on 'lack of subject-matter jurisdiction' over the dispute."). "A court lacks subject matter jurisdiction over a plaintiff's claims if those claims are not ripe for review." *Patterson*, 2020 U.S. Dist. LEXIS 171349, at *2-3 (citing *Bigelow v. Michigan Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992)); *see also Doe v. Univ. of Mich.*, 78 F.4th 929, 950 (6th Cir. 2023) ("Federal courts lack subject-matter jurisdiction over claims that are not yet ripe.").

"Defendants may make either a facial or a factual attack on subject matter jurisdiction under Rule 12(b)(1)." *Patterson*, 2020 U.S. Dist. LEXIS 171349, at *3 (citing *Ohio Nat'l Life*

8

*Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "A defendant's facial attack on the ripeness of the plaintiff's claims asserts the allegations of the complaint do not establish subject matter jurisdiction and implicates a similar standard of review as a Rule 12(b)(6) motion." *Id.*; *see also Banks v. United States, Dep't of the Treasury, IRS*, No. 1:08CV849, 2009 U.S. Dist. LEXIS 30225, at *11 (N.D. Ohio Mar. 27, 2009) ("A facial attack tests the adequacy of the complaint…."). "A factual attack, on the other hand, raises a factual controversy requiring the district court to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Wayside Church*, 847 F.3d at 817 (internal quotation and citations omitted). Here, the State of Ohio challenges the adequacy of Plaintiffs' allegations, and therefore asserts a facial attack. As such, like under Rule 12(b)(6), this Court should accept Plaintiffs' factual allegation as true, but not its legal conclusions. *Ass'n of Am. Physicians and Surgs. v. FDA*, 13 F.4th 531, 544 (6th Cir. 2021) (extending "*Twombly's* plausibility test" to a 12(b)(1) motion and instructing courts to "[a]ccept[] as true the complaint's factual allegations (as opposed to its legal conclusions).").

When responding to a facial attack, "the plaintiff bears the burden of establishing that subject-matter jurisdiction exists." *Hall v. Davis*, No. 23-3307, 2023 U.S. App. LEXIS 30757, at *4 (6th Cir. Nov. 17, 2023) (citing *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014)). Trial court decisions granting motions to dismiss under Rule 12(b)(1) are reviewed under a *de novo* standard. *Wayside Church*, 847 F.3d at 817.[3]

---

[3] There is an exception for factual attacks, which thus does not apply here, that requires "[w]here a trial court's ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's factual findings unless they are clearly erroneous." *Wayside Church*, 847 F.3d at 817 (citations omitted). But even then, "review of the district court's *application of the law* to the facts is *de novo*." *Id.* (emphasis in original) (quotation and citations omitted).

9

B. <u>Plaintiffs' Takings Claim Is Not Ripe for Review</u>

"The Takings Clause, applicable to the States through the Fourteenth Amendment, provides that 'private property [shall not] be taken for public use, without just compensation.'" *Tyler*, 598 U.S. at 637 (quoting U. S. Const., Amdt. 5). Nevertheless, "'[t]he jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions.'" *Cincinnati School Dist. v. Bd. of Edn.*, No. 04-4258, 2005 U.S. App. LEXIS 22497, at *7 (6th Cir. Oct. 17, 2005) (quoting *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623, 627 (6th Cir. 1987)). Accordingly, "[t]he ripeness 'doctrine exists to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities.'" *Id.* (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville,* 274 F.3d 377, 399 (6th Cir. 2001)).

Regarding takings claims, one federal appellate court succinctly noted that the U.S. Supreme Court has "articulated a special ripeness doctrine for constitutional property rights claims." *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); *see also* Wright & Miller, 13B Fed. Prac. & Proc. Juris. § 3532.1.1 (3d ed.) ("A special category of ripeness doctrine surrounds claims arising from government takings of property.").[4] Under that special doctrine,

---

[4] For many years, plaintiffs in federal takings cases were required to satisfy two prongs to show ripeness: (1) that the government entity reached a final decision (the "finality" requirement); and (2) that plaintiffs sought compensation through reasonable, certain and adequate state provisions for obtaining compensation (the "exhaustion" requirement). *See, e.g.*, *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 187, 194, 105 S. Ct. 3108 (1985); *see also* 2 Am. Law Zoning § 16.12 (5th ed.) (noting that *Williamson County* "forced takings plaintiffs to seek just compensation in state court in order to ripen their federal court takings action."). Under current law, there is no requirement that a plaintiff alleging a federal taking must go to state court and exhaust state court remedies before pursuing a 1983 action. *See Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019) (overruling state-litigation requirement of *Williamson County* ripeness test); *Pakdel v City & Cty of San Francisco*, 594 U.S. 474, 475 (2021) (*per curiam*) (accord).

"[a] federal court may hear a takings claim only after…the plaintiff has received a final decision from the relevant government actor." *Wayside Church*, 847 F.3d at 818 (internal quotation and citations omitted); *see also Pakdel*, 594 U.S. at 475 ("[A] federal court should not consider [a takings] claim before the government has reached a 'final' decision."). "After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Pakdel*, 594 U.S. at 475. A final decision requires a showing that "there is no question that the government's 'definitive position on the issue [has] inflict[ed] an actual, concrete injury.'" *Id.* at 479 (quoting *Williamson County*, 473 U.S. at 193). "This requirement ensures that a plaintiff has actually been injured by the Government's action and is not prematurely suing over a hypothetical harm." *Id.* (internal quotation and citation omitted).

As noted previously, Plaintiffs do not allege that the County Treasurer reached a final decision. Indeed, Plaintiffs do not even allege that they made a demand to the Treasurer for the surplus funds as provided under R.C. 5723.11, let alone that the Treasurer made a final decision regarding such demand and refused to pay them. Lacking any allegation of a final decision on the part of the County Treasurer to deny Plaintiffs surplus funds that under R.C. 5723.11, Plaintiffs' takings claim necessarily fails because it is not ripe for review. *See, e.g., McCausland v. Charter Twp. of Canton*, No. 23-1479, 2024 U.S. App. LEXIS 14916, at *17 (6th Cir. June 18, 2024) (affirming trial court's dismissal of takings claim for lack of ripeness where plaintiffs did not identify a final decision from the defendant-township that they wished to challenge); *Miller v. City of Wickliffe*, 852 F.3d 497, 504-506 (6th Cir. 2017) (affirming trial court's finding that plaintiff's court challenge to a city ordinance was not ripe where plaintiff never sought a required permit and thus there was no final decision by the city for the court to review); *Gabhart v. City of Newport*, No. 98-6181, 2000 U.S. App. LEXIS 4146, at *10-11 (6th Cir. Mar. 10, 2000) (affirming trial

court's dismissal of takings claim for lack of ripeness and holding that the plaintiff needed to obtain a final decision from the local planning commission before bringing a claim in federal court).

Accordingly, because Plaintiffs do not allege that the government made a final decision – which, under R.C. 5723.11, would be a final decision by the County Treasurer in response to a demand by Plaintiffs for the surplus – their takings claim is not ripe for review and therefore should be dismissed for lack of subject-matter jurisdiction.

### C. Plaintiffs' Excessive Fines Claim Is Not Ripe

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. 8. Plaintiffs allege generally that "Defendants' policy choice to take the surplus value from delinquent property taxpayers are, at least in part, a punitive policy designed to punish lawbreakers and to disincentivize others from lawbreaking," and thus is violative of the Excessive Fines Clause. Complaint, at ¶ 76. However, Plaintiffs do not allege specifically that the County Treasurer denied them surplus funds under R.C. 5723.11 and that such denial constitutes an excessive fine. Until Plaintiffs make such an allegation, their excessive fines claim is not ripe for review. This is because "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Infinity Outdoor, Inc. v. City of New York*, 165 F. Supp. 2d 403, 431 (E.D.N.Y. 2001) (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995) (concluding that excessive fines claim was not ripe where "no fine ha[d] been imposed, and no enforcement proceedings ha[d] been commenced against plaintiff"). *See also Stevens v. City of Columbus*, No. 21-3755, 2022 U.S. App. LEXIS 20829, at *36 (6th Cir. July 27, 2022) ("As cases outside this circuit have concluded, review of [an] Eighth Amendment challenge is best done after the imposition of a punishment or fine.") (citing *Duffner v. City of St. Peters*, 930

F.3d 973, 977 (8th Cir. 2019) ("Because it is unknown whether the City will impose sanctions on [plaintiff for violation of a turf grass ordinance] or, if sanctions are imposed, what they might be, [plaintiff] cannot establish that her Eighth Amendment claim is 'fit' for judicial decision.").

The trial court's decision in *Stevens v. City of Columbus*, No. 2:20-cv-01230, 2021 U.S. Dist. LEXIS 151682, (S.D. Ohio Aug. 11, 2021), is instructive. At issue there was a city ordinance that required property owners in certain historic districts to first obtain approval before altering or making significant changes to their property. *Id*. at * 2. Plaintiffs renovated their home and yard without following the approval process. *Id*. at *3. The city then issued a code violation notice to plaintiffs directing them to comply with the notice "or face monetary fines or punishment of sixty days imprisonment." *Id*. But the city never took any action to collect a fine or otherwise enforce the ordinance. *Id*. at *7. Plaintiffs pursued appeals through the appropriate local zoning bodies and then the municipal court, none of which were successful. *Id*. at *3-4. Plaintiffs then sought injunctive relief in federal court under Section 1983. *Id*. at *4. After the district court denied plaintiffs' motion for a preliminary injunction, the only substantive claim remaining was plaintiffs' excessive fines claim. *Id*. The district court dismissed the claim on ripeness grounds. The court stated that "[b]ecause there is no evidence that any action has been taken to pursue collection from Plaintiffs, the inquiry is not ripe and must be postponed if and until the issues are presented in more concrete circumstances sufficient for this Court to review." *Id*. at *8. The Sixth Circuit affirmed, stating that plaintiffs' "Excessive Fines challenge is not ripe for the simple reason that the City has yet to impose or seek any fine against them." *Stevens*, 2022 U.S. App. LEXIS 20829, at *35.

*Stevens* should compel this Court to enter a similar result. In *Stevens*, the plaintiffs could at least point to a code violation notice in which the city threatened them with fines or

imprisonment, but that was not enough to establish ripeness. Here, Plaintiffs do not assert any allegations pertaining to R.C. 5723.11 whatsoever. Again, they do not allege that they made any demand to the County Treasurer for the surplus under R.C. 5723.11, nor do they allege that the Treasurer refused to pay them. If the Treasurer denies a request by Plaintiffs for payment of the surplus, then they may "have a ripe challenge. But because such a factual scenario [is] not now before the [Court]…the Eighth Amendment challenge is not ripe." *Stevens*, 2022 U.S. App. LEXIS 20829, at *36. This Court accordingly lacks subject-matter jurisdiction over Plaintiffs' excessive fines claim.

## V.  CONCLUSION

For all these reasons, the State of Ohio respectfully requests that this Court dismiss Plaintiffs' claims for lack of subject-matter jurisdiction because Plaintiffs' claims are not ripe for review.

Respectfully submitted,

**DAVE YOST**
Attorney General of Ohio

*/s/ Chad M. Kohler*
**CHAD M. KOHLER (0074179)**
Principal Assistant Attorney General
30 E. Broad St., 26th Floor
Columbus, Ohio 43215
Telephone: (614) 466-5861
Fax: (866) 514-0279
Chad.Kohler@OhioAGO.gov
*Counsel for Defendant-Intervenor, the State of Ohio*

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of December, 2024, the foregoing document was filed electronically with the Court's ECF system, which will send notification of such filing to all counsel of record.

*/s/ Chad M. Kohler*
**CHAD M. KOHLER (0074179)**
Principal Assistant Attorney General