IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| INEZ NIEVES, et al. ) | |
| ) | |
| *Plaintiffs*, ) | |
| v. ) | Case No. 1:24-cv-01861-DAP |
| ) | |
| LORAIN COUNTY BOARD OF ) | |
| COMMISSIONERS, et al. ) | Judge Polster |
| ) | |
| *Defendants*. ) | |

### MOTION TO DISMISS BY THE LORAIN COUNTY PORT AUTHORITY

*1. Introduction and Overview.*

Comes now the Lorain County Port Authority ("LCPA"), by and through counsel of record, and pursuant to Fed. R. Civ. P. 12(B)(6) moves to dismiss the First Amended Complaint ("FAC") against it. In a nutshell, the Plaintiffs contend that their house was foreclosed upon by the Lorain County, Ohio Auditor's office ("Auditor") for delinquent County property taxes. (In actuality, it was the Lorain County Treasurer's office; see below). They allege that when their house failed to receive a minimum bid at auction, it was, in sequence: forfeited to the State of Ohio; subsequently conveyed by the State of Ohio to the Lorain County Land Reutilization Corp. ("Land Bank") for sale; and ultimately, sold by the Land Bank to a private third party for, they suggest "on information and belief," more than the amount of the delinquent taxes.

From there, the Plaintiffs contend that any surplus proceeds (sale price less tax debt) from the sale of their former house have been taken by the Land Bank, and that their retention amounts to a compensable "Taking" under the Fifth Amendment to the U.S. Constitution. See Tyler v. Hennepin County, 598 U.S. 631 (2023). The Plaintiffs also argue that a tax forfeiture

process that does not allow them to reclaim their surplus imposes an "Excessive Fine" in violation of the Eighth Amendment to the U.S. Constitution.

There are three problems with the Plaintiffs' complaint with respect to LCPA. *First*, LCPA is the wrong party to sue and the FAC is inadequately pled against it. Under the Hennepin County line of cases, the party against whom this type of a "Takings" claim potentially lies is the agency that initially takes the title from the homeowners (here, the State of Ohio) without recourse to claim any post-sale surplus (here, no one). See, e.g., Sinclair v. Meisner, 2024 U.S. Dist. LEXIS 48399 (E.D. Mich., Mar. 19, 2024). LCPA is not the State of Ohio. Rather, LCPA has been lumped into a "group pleading" in the FAC in which it is simply identified as one of a group of allegedly liable "Defendants," a pleading practice which fails Twombley/Iqbal plausibility analysis in the Sixth Circuit.

*Second*, the FAC goes out of its way to mischaracterize the applicable Ohio tax forfeiture statutes in an effort to shoehorn these Plaintiffs into the Hennepin County line of cases. Under Ohio law, R.C. 5723.01 et seq., Ms. Nieves and Ms. Ramos have not had any surplus proceeds "taken" by anyone. As observed by the State of Ohio in its prior motion to dismiss [D. 9], the Plaintiffs have an unexpired, statutory opportunity to simply fill out a form, submit it to the Lorain County Auditor, and recover any post-sale surplus as a matter of course. R.C. 5723.11. Efforts to extend Hennepin County to situations where the homeowners can apply for any surplus within a given time frame have consistently failed. E.g., Howard v. County of Macomb, Case No. 1:23-cv-12595, 2024 U.S. Dist. LEXIS 139474 (E.D. Mich., Aug. 6th, 2024): Metro T. Properties, LLC v. City of Wayne, 2024 U.S. Dist. LEXIS 26689, at *4 (E.D. Mich., Feb. 15, 2024).

*Finally*, even if this case presented a <u>Hennepin County</u> situation, it is well settled that tax forfeitures are not "Excessive Fines" for Eighth Amendment purposes. A fine is something leveled as a punishment. This is not that.

***2. Facts Alleged And Claims Made By The First Amended Complaint***.

***A. Ohio's Forfeiture Statutes For Unsold, Tax-Foreclosed Properties, And The Owner's Remedies Depending On Whether The Land Is "Delinquent" Or "Non-Productive."***

The Plaintiffs' FAC [D. 10] elaborately mischaracterizes how County property tax forfeitures work under the Ohio Revised Code. They do so by conflating the former owners' rights under two separate and distinct forfeiture processes: R.C. 5723.01 <u>et seq</u>. (generally applicable to County property tax forfeitures) and R.C. 5722.01 et seq. (an alternative, expedited forfeiture process that counties may use to address defined "non-productive" lands).

The Plaintiffs observe that the forfeiture process under R.C. 5722.01 ("non-productive" lands) lacks an explicit avenue for the former owners of tax-forfeited property to reclaim any post-sale surplus value, whereas R.C. 5723.11 (general procedure) does have such an explicit procedure. Plaintiffs then argue that during a County tax foreclosure, when because of lack of bidders at auction the property is forfeited to the State, the forfeiture process then becomes governed by R.C. 5722.01 and its lack of an explicit avenue to recover any eventual post-sale surplus. This is argued to be true regardless of whether the forfeited property falls within the definition of "non-productive" or not. This is legally incorrect.

***1. R.C. 5723.01 <u>et seq</u>.: The Generally Applicable Forfeiture Statute.***

Ohio's generally applicable, post-tax foreclosure forfeiture process, applicable to any tax-foreclosed real property that fails to sell at auction, is found at R.C. 5723.01 <u>et seq</u>. R.C. 5723.01(A)(1) provides that:

> Every tract of land and town lot, which, pursuant to foreclosure proceedings under section 323.25, sections 323.65 to 323.79, or section 5721.18 of the Revised Code, has been advertised and offered for sale on two separate occasions, not less than two weeks apart, and not sold for want of bidders, shall be forfeited to the state or to a political subdivision, school district, or county land reutilization corporation pursuant to division (A)(3) of this section.

If such a two-attempt, non-sale event occurs, then the County prosecuting attorney certifies this fact to the Court in which the tax foreclosure suit is pending. R.C. 5723.01(A)(3). Notice of the two-attempt sale failure is then given to the "political subdivision and school district in which the property is located, and any county land reutilization corporation in the county…" The County Auditor then "offer[s] to forfeit the property to the political subdivision, school district, or corporation, or to an electing subdivision as defined in section 5722.01 of the Revised Code, upon a petition from the political subdivision, school district, or corporation." Id. (An "electing subdivision," as defined in R.C. 5722.01, is any county land bank in that county). See R.C. 5722.01 (definitions).

If none of these potential recipients petitions the Court in response to receive the property within ten (10) days of such notice, then the Court instead "forfeits" the foreclosed property to the State of Ohio for later disposal, under R.C. 5723.01(A)(2). Id., see R.C. 5723.01(B) (the property is "forfeited" to the State "to be disposed of in compliance with *this chapter*." (Emphasis added). Critically, "this chapter" is R.C. Chapter *5723*, *not* Chapter *5722*.

Unclaimed and unsold properties "forfeited" to the State under R.C. Chapter 5723 are then placed on a forfeiture list for the County Auditor to try and sell later, at least annually. R.C. 5723.04. Once a property makes it onto this forfeited property list, if there is a "county land reutilization corporation" in that County (e.g., the Land Bank), the Land Bank can change its mind later and apply to the County Auditor for title. Id. at (B). No consideration is paid by the

4

Land Bank under such circumstances, and the transfer of title is accomplished by a conveyance in the form of an "auditor's deed," free and clear of liens and encumbrances. Id.

In Lorain County, as alleged in the FAC, the "county land reutilization corporation" is the Defendant Land Bank. Once the Land Bank receives a forfeited property by auditor's deed, the Land Bank can then sell the property to a third party. R.C. 5723.11 then addresses the rights of the former owner to any net proceeds realized by the Land Bank after such a sale:

> If any forfeited lands are sold for a greater sum than the amount of the tax, assessment, penalty, interest, and costs of sale, the county auditor shall charge the county treasurer separately in each case, in the name of the supposed owner, with the excess above such amount. The treasurer shall retain such excess in the treasury for the proper owner of the forfeited lands, and upon demand by such owner, within one year from the day of sale, shall pay the excess to the owner. After that one year, the treasurer shall dispose of any excess according to law or, if a county land reutilization corporation organized under Chapter 1724 of the Revised Code exists in the county, shall pay the amount to the corporation. Such money shall be used for the corporation's public purposes.

Thus, for one year following a sale by the Land Bank of property that it has received under R.C. Chapter 5723, any surplus proceeds from the sale can be recovered as of right ("shall") by the former owners from the County Auditor.

With how things normally work under R.C. *Chapter 5723* clearly laid out, we can now turn our attention to the alternative, expedited foreclosure process for defined "non-productive" lands in R.C. *Chapter 5722*.

*2. R.C. 5722.01 et seq. Is An Alternative, Expedited Forfeiture Process That Can Only Be Invoked In The Case Of Defined "Non-Productive" Property Forfeitures (i.e., Vacant, Abandoned Or Condemned Properties).*

R.C. Chapter 5722 provides an alternative, faster forfeiture track for defined "non-productive" tax foreclosed properties. Following the passage of an initial County legislative resolution authorizing the expedited program for the County Land Bank, "the foreclosure, sale, management, and disposition of all *nonproductive* land situated within the electing subdivision's

5

boundaries shall be governed by the procedures set forth in sections 5722.02 to 5722.15 of the Revised Code, and, in the case of a county land reutilization corporation, as authorized under Chapter 1724. of the Revised Code." R.C. 5722.02(C). (Emphasis added).

Both "nonproductive" land and "electing subdivision" are defined terms for purposes of R.C. Chapter 5722. See R.C. 5722.01. Pursuant to R.C. 5722.01(A), the "electing subdivision" is the county land reutilization corporation, if there is one. As discussed above, in Lorain County that is the Defendant Land Bank. "Nonproductive" lands potentially subject to R.C. Chapter 5722's faster track forfeiture and reutilization process are limited by definition to various categories of vacant or abandoned land. See R.C. 5722.01(F):

> "Nonproductive land" means any parcel of delinquent vacant land with respect to which a foreclosure and forfeiture proceeding pursuant to section 5721.14 of the Revised Code has been instituted; and any parcel of delinquent land with respect to which a foreclosure proceeding pursuant to section 323.25, sections 323.65 to 323.79, or division (A) or (B) of section 5721.18 of the Revised Code has been instituted *and to which one of the following criteria applies*:
>
> (1) There are no buildings or structures located on the land;
>
> (2) The land is abandoned land as defined in section 323.65 of the Revised Code;
>
> (3) None of the buildings or other structures located on the parcel are in the occupancy of any person, *and* the township or municipal corporation within whose boundaries the parcel is situated has instituted proceedings under section 505.86 or 715.26 of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution, for the removal or demolition of such buildings or other structures by the township or municipal corporation because of their insecure, unsafe, or structurally defective condition;
>
> (4) None of the buildings or structures located on the parcel are in the occupancy of any person at the time the foreclosure proceeding is initiated, *and* the municipal corporation, county, township, or county land reutilization corporation determines that the parcel is eligible for acquisition through a land reutilization program.

(Emphasis added). In other words, Chapter 5722's alternative forfeiture procedure can only be applied to foreclosures against delinquent property that is *also* vacant (no buildings or structures)

6

[(F)(1)], "abandoned" as defined at R.C. 323.65 [(F)(2)], unoccupied and already subject to a pending nuisance condemnation action [(F)(3)], or unoccupied at the commencement of the foreclosure action *and* the Land Bank determines to proceed in that fashion. [(F)(4)]. R.C. 323.65(A), in turn, defines "abandoned," non-agricultural land as:

> "Abandoned land" means delinquent lands or delinquent vacant lands, including any improvements on the lands, that are unoccupied and that first appeared on the list compiled under division (C) of section 323.67 of the Revised Code, or the delinquent tax list or delinquent vacant land tax list compiled under section 5721.03 of the Revised Code, at whichever of the following times is applicable:
>
> (1) In the case of lands other than agricultural lands, at any time after the county auditor makes the certification of the delinquent land list under section 5721.011 of the Revised Code….

R.C. 5721.011, in turn, pertains to the County Auditor's preparation of a delinquent tax list on an annual basis, and R.C. 323.67(C) pertains to the County Auditor's list of properties that he has certified as abandoned. In short, R.C. Chapter 5722 applies at the Land Bank's option to property that is, at the time of the commencement of the foreclosure, vacant, abandoned, or subject to nuisance condemnation proceedings.

For these types of properties, R.C. Chapter 5722 permits a different, more expedited, forfeiture process. The Land Bank notifies the County's prosecuting attorney, ***prior*** to an attempt to sell vacant/abandoned/condemned property at auction, that the Land Bank wants to receive the property. R.C. 5722.03(C). When this happens, only one attempt (vs. two) to sell the property at auction occurs, and if no minimum bid is received, the Land Bank is deemed the successful bidder. R.C. 5722.03(D). An "auditor's deed" is then issued to the Land Bank at the conclusion of the foreclosure case. Id. at (F).

If defined "nonproductive land" has been forfeited to the State incident to a foreclosure--for example, because despite its being vacant, the Land Bank did not want it at that time--then

7

R.C. 5722.04 comes into play. Such properties are, like most properties, forfeited to the State and are subject to conveyance to the Land Bank upon later request. R.C. 5722.04. Abandoned/vacant/condemned properties are listed separately, and advertised for sale separately as abandoned/vacant/condemned properties by the County Auditor. Id. If, after being forfeited to the State and ending up on the County Auditor's forfeited, nonproductive properties list, the Land Bank decides that it wants the property after all, then the County Auditor will issue the Land Bank a certificate indicating that it was the successful bidder (by default) on the prior, one-time auction attempt. This is then followed by an auditor's deed to the Land Bank. Id.

When the County Auditor forecloses on a piece of vacant/abandoned/condemned property under R.C. 5722.01 et seq., the former owners still retain some recourse, but it is a different process. They can seek to have the sale reopened within one year of the transfer of the property to the Land Bank. R.C. 5722.05. However, R.C. 5722.08 does provide for retention and expenditure of funds received by the Land Bank for its program in the case of a sale of nonproductive lands, if the "nonproductive land" process is not undone in the ensuing year. Id.

***B. Facts In Plaintiffs' First Amended Complaint, Vs. Legal Conclusions***.

The First Amended Complaint ("FAC") alleges as follows: The Plaintiffs, Inez Nieves and Betsy Ramos, are residents of Lorain County. FAC [D.10], at ¶¶9-10. Allegedly, the Land Bank is a "component unit or operator" of LCPA, and "operated day-to-day" by LCPA staff[1]. Id. at ¶35. They bought a house at 125 W. 9th St., Lorain, Ohio in 2006. In 2022, they fell behind on their Lorain County property taxes, and the house became the subject of judicial tax foreclosure proceedings by Lorain County. Id. at ¶¶25-26. The house was put up for sale at auction on two

---

[1] For the record, these claims are incorrect. They are separate entities, and neither controls the other. But for purposes of this motion, the error is immaterial, and we assume the truth of the allegation for the sake of argument.

8

dates (per R.C. Chapter 5723), not one (per R.C. Chapter 5722), and did not receive a minimum bid. Id. at ¶¶26-27. As a result, the property was forfeited to the State of Ohio "under R.C. 5723.06." Id. at ¶¶26-27, 37 & Ex. 6 to FAC.

The implementing forfeiture conveyance to the State occurred on October 26, 2022. Id. at ¶¶27-29. Several months later, the property was claimed off of the forfeiture list by the Land Bank, conveyed to it by State of Ohio in February 2023, and re-conveyed by the Land Bank to a private third party in July 2024. Id. at ¶40 & Exs. 7 & 8. Plaintiffs claim, "on information and belief", that the Land Bank reconveyed the Property for more than the back taxes owed (claimed to be $16,257). Id. at ¶43.

In terms of causes of action, the Plaintiffs argue that this process amounted to a compensable "Taking" by the "Defendants" generally, without specifying which one. Id. at ¶¶72-78. They further argue that the alleged unavailability of any surplus from the sale for the Plaintiffs amounts to an "Excessive Fine" under the Eighth Amendment to the U.S. Constitution. Id. at ¶¶79-88.

The public records attached to and incorporated into the FAC are consistent with this forfeiture having been conducted under R.C. Chapter 5723 (in addition to the Plaintiffs' alleging it). Id. at ¶¶26-27, 37 & Ex. 6 to FAC. The Court's forfeiture order, Ex. 6 to the FAC [D. 10, PAGEID#168] explicitly states that is entered under Chapter 5723 (not 5722), forfeited to the State of Ohio, ***and that further sales were to be pursuant to Chapter 5723*** (not 5722). It was advertised twice for sale (as it would be under Chapter 5723), vs. once (as it would have been under Chapter 5722). Finally, there is no allegation in the FAC that the Plaintiffs' former home was, in fact, "nonproductive" as defined (vacant land, abandoned, or condemned).

9

*C. Overreach In The Legal Arguments Underlying The Plaintiffs' Takings Claim.*

The FAC goes out of its way to stridently argue that the Plaintiffs' forfeiture process, which began as a general tax forfeiture under R.C. Chapter 5723, somehow magically became subject to R.C. Chapter 5722's provisions limited to "nonproductive" land forfeitures, because the foreclosed property was forfeited to the State when it went unclaimed at auction. The Plaintiffs miscite two Ohio Attorney General Opinions as though they support this notion. See 2015 Ohio Op. Att'y Gen No. 5 (02/11/2015), available at 2015 Ohio AG Lexis 5; Ohio Op. Att'y Gen. 91-027 (06/06/1991) (miscited by its file number in the FAC (2-143)). Neither one supports it.

The 1991 Ohio Attorney General Opinion concerns R.C. Chapter 5722 forfeitures of nonproductive lands, as defined. It discusses the process under R.C. Chapter 5722: when a land bank exercises its right to be declared the winner after one attempt at auctioning a nonproductive land, a certificate of sale goes to the County Auditor from the Court, and then a deed goes from the County Auditor to the electing land bank. This opinion does not discuss the process for R.C. Chapter 5723 forfeitures at all. Rather, the opinion makes clear that the R.C Chapter 5722 forfeiture process is for defined nonproductive lands (vacant/abandoned/condemned).

The 2015 Ohio Attorney General Opinion is equally clear. 2015 Ohio Att'y Gen. Op. 5, at *52-53. When a county with a land bank acquires land from the State under R.C. Chapter 5723 and then resells it, the surplus proceeds are held for a year. Then, if they go unclaimed, they go to the land bank. This Attorney General Opinion discusses what happens to such funds in counties in which there is no land bank, and concludes that they have to be held even longer for the former owners to claim. Id.

10

*3. Standard Of Review*.

The Court may grant a motion to dismiss under Fed R. Civ. P. 12(B)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). On a Rule 12(b)(6) motion, courts may "consider the [c]omplaint and any exhibits attached thereto…[and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Ath. Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc., 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021).

The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. Bassett, 528 F.3d at 430. But the Court will not presume the truth of any legal conclusions or arguments that are raised in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss the complaint. Winnett v. Caterpillar, Inc., 553 F.3d 1000, 1005 (6th Cir. 2009). Thus, "alleging" one's spurious legal argument in one's complaint does not insulate it from dismissal under Fed. R. Civ. P. 12(B)(6).

*4. The LCPA Is Not A Proper Party To A Hennepin County "Takings" Claim, And The Allegations Against It Are "Group Pleadings" That Fail Fed. R. Civ. P. 12(B)(6) Review.*

Plaintiffs' "Takings" claim fails to state a cause of action against LCPA for the simple reason that, as a matter of Ohio law, LCPA is not the "taker" on any County tax forfeiture. The party that initiated the tax foreclosure against the Plaintiffs' property was the Lorain County

11

Treasurer. See FAC Ex. 6 [D.10, PAGEID#168]. In this case, since no minimum bid was received and no local governmental agency elected initially to take the property, the State of Ohio initially received title as a result of the foreclosure. See ante.

LCPA is not alleged to have foreclosed on the property, sold it, forfeited it, received any of the proceeds, or indeed undertaken any particular act. Rather, Plaintiffs have only alleged that Land Bank is a "component unit or operator" of LCPA, and is "operated day-to-day" by LCPA staff. Id. at ¶35. But these allegations do not make the LCPA the "taker", even if true. E.g., Sinclair v. Meisner, No. 2-18-CV-14042-TJB-MGH, 2024 U.S. Dist. LEXIS 48399 (E.D. Mich., Mar. 19, 2024); Lyndon's LLC, v. City of Detroit, Case No. 22-11942, 2023 U.S. Dist. LEXIS 167313 (E.D. Mich., Jul. 13, 2023); and Hall v. Meisner, 51 F.4th 185, 196-97 (6th Cir. 2022), cert. denied, 143 S.Ct. 2639 (2023).

In each of those cases, the plaintiffs attempted to pursue the same "Takings" claim as the Plaintiffs do here. Like here, those plaintiffs tried to assert their "Takings" claim against a slew of County-related agencies and actors, without paying attention to which government agency actually receives the property when it is forfeited. Sinclair, id. at *18-21; Lyndon's, id. at *15-16; Hall, id. at 196. And in each of these cases, the Court held that the "Takings" claim could only be asserted against the entity that actually took the Plaintiffs' title, not those alleged to have been involved with it after the taking occurred. "[T]he act of taking is the event which gives rise to the claim for compensation." Hall, id., quoting Knick v. Township of Scott, 139 S.Ct. 2162, 2170 (2019). Other actions and/or subsequent actions (whatever they supposedly were) do not cause anyone's property to be "taken" and are therefore not actionable as a "Taking." Id. at *20-21.

12

The FAC correctly alleges that the entity that first received title after the Plaintiff lost it in the foreclosure case was the State of Ohio. There is no allegation that LCPA received the property at any time, let alone when the Plaintiffs lost title. Hence, the "Takings" claim fails against LCPA as a matter of law.

In addition, as against LCPA, the FAC is a classic example of a Fed R. Civ. P. 12(B)(6) non-compliant "group pleading": generally alleging that the "Defendants" are liable as a group for described conduct, with no allegation against the moving Defendant that it did or did not do any particular thing.

> [I]n the Sixth Circuit, grouping all defendants together collectively and providing no factual basis to distinguish each defendants' conduct does not satisfy the *Twombly/Iqbal* fair notice pleading standard. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (affirming dismissal of claims against officers where complaint made only categorical references to "defendants" collectively). *See also Campbell v. Worthy*, No. 12-CV-11496, 2013 U.S. Dist. LEXIS 78818, 2013 WL 2446287, at *2 (E.D. Mich. June 5, 2013) (discussing *Marcilis* and dismissing claims against police officers where the plaintiff failed to plead sufficient factual allegations against each officer)."

Jefferson v. Fenech, Case No. 18-12811, 2020 U.S. Dist. LEXIS 235224, at *9-10 (E.D. Mich. Dec. 15, 2020). All we are told by the FAC with respect to the LCPA is that it is supposedly somehow related to the Land Bank, not what the LCPA itself did. These allegations are insufficient under Marcilis, ante, to state any claim against LCPA for purposes of Fed. R. Civ. P 12(B)(6).

***5. The Availability Of A Timely Application Process To Recover Any Post-Sale Surplus Defeats The Plaintiffs' "Takings" Claim Against All Defendants.***

The Hennepin County "Takings" problem is not an issue in Ohio, because with the exception of an expedited forfeiture of a "nonproductive" property—not at issue here—a forfeited homeowner can get her or his surplus proceeds upon timely request. Courts applying the Hennepin County decision have recognized that the availability of a claim procedure for any

13

post-sale surplus defeats the "Takings" claim. The court in <u>Howard v. County of Macomb</u>, Case No. 1:23-cv-12595, 2024 U.S. Dist. LEXIS 139474 (E.D. Mich., Aug. 6th, 2024) aptly explained why:

> Plaintiff argues that a takings claim is not conditioned on whether a former property owner proactively sought compensation for what the government took, and that former property owners are entitled to compensation *regardless of* whether they seek to redeem those proceeds using Michigan's effort at providing a remedy by statutory procedure.
>
> But Plaintiff's argument has a problem: a 1956 Supreme Court case, *Nelson v. City of New York, 352 U.S. 103, 77 S. Ct. 195, 1 L. Ed. 2d 171 (1956)*. In *Nelson*, the Supreme Court concluded that "*nothing* in the Federal Constitution prevents [municipalities from retaining surplus proceeds from a foreclosure sale] where the record shows adequate steps were taken to notify the [former] owners of the charges due and the foreclosure proceedings" and the former owners did not undertake "timely action to redeem or to recover[] any surplus" proceeds according to state law. *Id. at 110* (emphasis added). Importantly, in *Nelson*, the Court explicitly rejected the appellant's argument that the retention of surplus proceeds was a *taking* under the *Fifth Amendment* because there was no "statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale." *Id.*
> …
> And though *Nelson* is almost 70 years old, modern Supreme Court decisions suggests [sic] *Nelson* remains good law. In *Tyler v. Hennepin Cnty, Minn.*, decided in 2023, the Supreme Court reasoned that the ordinance at issue in *Nelson* "simply defined the process through which the [former property] owner could claim the surplus proceeds" and did not "prohibit claiming the surplus proceeds altogether," whereas the statute in *Tyler* "provid[ed] no opportunity" for the former property owner to recover surplus proceeds, and that those proceeds "*always* remain[ed] with the State." *598 U.S. 631, 644, 143 S. Ct. 1369, 215 L. Ed. 2d 564 (2023)* (emphasis added). This detailed distinction between *Nelson* and *Tyler* certainly suggests the holding in *Nelson* remains legally sound. The Sixth Circuit, this Court, and Michigan state courts have held the same. *See, e.g., Metro T. Properties, LLC v. Cnty. of Wayne, No. 23-CV-11457, 2024 U.S. Dist. LEXIS 26689, 2024 WL 644515, at *4 (E.D. Mich. Feb. 15, 2024)* (dismissing plaintiff's federal takings claim under *Nelson* where plaintiff did not follow Michigan's procedure for recovering such proceeds); *Rafaeli, LLC v. Oakland Cnty., 952 N.W. 2d 461, 434 (Mich. 2020)* ("*Nelson*… informs us that no federal *Takings Clause* claim will exist when there is a statutory path to recover the surplus proceeds but the property owners fail to avail themselves of that procedure."); *Hall v. Meisner, 51 F.4th 185, 196 (6th Cir. 2022)* (emphasizing that "[t]he express basis for the decision in *Nelson*" was that the plaintiffs had not

followed the established procedure to recover their surplus proceeds, but the pre-*Rafaeli* GPTA "gave the plaintiffs no such opportunity at all.").

Id. at *7-*10 (record citations omitted). Accord, Metro T. Properties, LLC v. City of Wayne, 2024 U.S. Dist. LEXIS 26689, at *4 (E.D. Mich., Feb. 15, 2024) (if the homeowners have a process to follow to reclaim any surplus, there is no "Takings" claim under Hennepin County; Nelson instead controls). The same result should follow here, for the same reasons.

*6. The Eighth Amendment "Excessive Fine" Claim Is Contrary To Sixth Circuit Precedent*.

As discussed above, the "group pleading" allegations of the FAC against LCPA fail to meet the Twombly/Iqbal fair notice pleading standard. In addition, the Plaintiffs' Eighth Amendment "Excessive Fines" claim also fails as a matter of law against every Defendant. In Freed v. Thomas, 81 F.4th 655, 659 (6th Cir. 2023), the Sixth Circuit rejected an argument that even a forfeiture process that purported to take all of the surplus from a tax foreclosure sale implicated the Eighth Amendment prohibition against "Excessive Fines". Simply put, such a process does not levy a fine. Fines are inflicted by government actors as punishment for bad behavior. Whether or under what circumstances a foreclosed homeowner may get its surplus post-sale is not punitive in this sense. Accord, Hall v. Meisner, 51 F.4th 185, 196-97 (6th Cir. 2022), cert. denied, 143 S.Ct. 2639 (2023).

*7. Conclusion*.

The First Amended Complaint should be dismissed with prejudice for failing to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(B)(6).

15

                Respectfully Submitted:

                **/s/ Jeffrey S. Moeller**
                Keith A. Savidge (0014242)
                Jeffrey S. Moeller (0074512)
                SEELEY, SAVIDGE EBERT & GOURASH, LPA
                26600 Detroit Rd. Suite 300
                Westlake, OH 44145
                Tel: 216-566-8200
                Fax: 216-566-0213
                *Counsel for: Lorain County Port Authority*
                KASavidge@sseg-law.com
                jmoeller@sseg-law.com

### **CERTIFICATE OF SERVICE AND LOCAL CIV. R. 7.1 CERTIFICATE**

The undersigned counsel certifies that: 1) this case has not been assigned to a track, but it would comply with the page limits of a standard track dispositive motion; and that 2) on February 3rd, 2025, he caused a true and correct copy of this document to be served on the following via the Court's e-distribution system, to:

Benjamin M. Flowers, Esq.
Joseph P. Ashbrook, Esq.
Ashbrook Byrne Kresge Flowers LLC
PO Box 8248
Cincinnati, OH 45249
bflowers@ashbrookbk.com
jpashbrook@ashbrookbk.com

Daniel R. Suhr, Esq. *(admitted pro hac vice)*
Hughes & Suhr LLC
747 N. LaSalle St., Suite 210
Chicago, IL 60654
dsuhr@equitylawsuit.com

Christopher E. Mills *(admitted pro hac vice)*
Spero Law LLC
557 East Bay St. #22251
Charleston, SC 29413
cmills@spero.law
*Counsel for: Plaintiffs*

Chad M. Kohler, Esq.
Office of the Attorney General - Columbus
25th Floor, 30 East Broad Street

Columbus, OH 43215
chad.kohler@ohioago.gov
*Counsel for: State of Ohio*

Daniel F. Petticord, Esq.
Gregory A. Peltz, II, Esq.
Office of the Prosecuting Attorney - Lorain County
3rd Floor, 225 Court Street
Elyria, OH 44035
dan.petticord@lcprosecutor.org
greg.peltz@lcprosecutor.org
*Counsel for: Lorain County Bd. of Comm'rs & Craig Snodgrass, Lorain County Auditor.*

                                                 **/s/ Jeffrey S. Moeller**
                                                 Jeffrey S. Moeller