IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| INEZ NIEVES, et al. | CASE NO. 1:24-cv-01861 |
| Plaintiffs, | |
| vs. | JUDGE DAN AARON POLSTER |
| LORAIN COUNTY BOARD OF COMMISSIONERS, et al. | MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |
| Defendants. | |

Defendants Lorain County Board of Commissioners and Auditor Craig Snodgrass, through their counsel, respectfully come before this Court and move the Court to dismiss Plaintiffs' second amended complaint against them pursuant to Fed. R. Civ. P. 12(b)(6), on grounds that Plaintiffs again have not stated a claim against them that would warrant relief. A memorandum in support of this motion follows.

Respectfully submitted,

**ANTHONY CILLO (62497)**
Prosecuting Attorney
Lorain County, Ohio


/s/ **Leigh S. Prugh**
Leigh S. Prugh (72852)
Assistant Prosecuting Attorney
225 Court Street, 3rd Floor
Elyria, OH 44035
T. (440) 329-5736
F. (440) 329-5430
leigh.prugh@lcprosecutor.org
*Counsel for the Lorain County Board of Commissioners and Craig Snodgrass*

1

**MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

The Plaintiffs in this matter find themselves throwing their third strand of spaghetti against the wall, hoping it will stick. They now ask this Court to consider their latest iteration of their cause of action. However, the allegations have shifted in a significant way, giving rise to an entirely new theory of recovery. This theory borders on the absurd, which is a consequence of the Plaintiffs' own making, as it has now been shown that the Plaintiffs have been less than diligent in gathering the facts giving rise to their original theory of recovery and have misrepresented key facts in this matter from the beginning.

**II.     STATEMENT OF THE CASE**

    **A.      The Original Complaint**

Plaintiffs Inez Nieves and Betsy Ramos filed their original complaint in this matter on October 25, 2024. (Original Complaint filed October 25, 2024 {"OC"}.) Again, the gist of their action was to launch litigation in response to the United States Supreme Court's ruling in *Tyler v. Hennepin County*, 598 U.S. 631 (2023). (OC, ¶ 4.) Plaintiffs sued an entity they identified as "Lorain County" in this version of the Complaint. They also sued Auditor Craig Snodgrass ("Auditor Snodgrass"), claiming that as Auditor, he was responsible for "implementing the tax forfeiture policies of the County." (OC, ¶ 13.) The Plaintiffs claimed these two defendants "violated the rights of Plaintiffs and all other similarly situated {the plaintiff class} by *stealing the value in their property* over and above the amounts legally owed for back property taxes." (OC, ¶ 14, emphasis added)

This allegation made up the lifeblood of the cause of action in their original complaint. The allegations state that the property was forfeited to the State of Ohio after it failed to sell at two

2

open auction dates (OC, ¶¶ 22-23); was transferred to the Lorain County Land Reutilization Corporation, known commonly as Lorain County's Land Bank (OC, ¶ 34); and then "upon information and belief, the land bank sold the property to All American Home Renovations LLC for a price *above* the back taxes owed by Inez and Betsy (only $16,257)." (OC, ¶ 39.) Plaintiffs then alleged "A taking in violation of *Tyler* occurred when the County land bank issued a deed transferring the entire property to All American Home Renovations, LLC without paying the difference between the sale price and the taxes owed to the prior owners." (OC, ¶ 40.)

Plaintiffs alleged wrongdoing by the "Lorain County" entity, ascribing all activity associated with the foreclosure of their property, the forfeiture, the transfer to the Land Bank, and the subsequent property sale to "Lorain County." (OC, ¶ 40.) Specifically as to Auditor Snodgrass, they made no meaningful allegations against him except to reference a portion of his statutory responsibilities, and to state that he complied with them. Nevertheless, so onerous was this conduct that Plaintiffs alleged "Lorain County" and Auditor Snodgrass displayed a consistent indifference that shocked the conscience, going as far as to describe their actions as "intentional government-organized theft on a massive scale." (OC, ¶ 60.)

In response, the defendants moved to dismiss Plaintiffs' complaint on grounds that under Fed. R. Civ. P. 12(b)(6), the complaint failed to state a claim upon which relief could be granted. (Defendants' Lorain County and Craig Snodgrass Joint Motion to Dismiss filed December 18, 2024 ["County Defendants' Motion to Dismiss"].) Specifically, they argued that "Lorain County" is not an existing sui juris political subdivision capable of being sued, and that Plaintiffs did not allege any meaningful course of conduct undertaken by Auditor Snodgrass that would warrant the action against him. (County Defendants' Motion to Dismiss, p. 4-5.)

3

B. **The First Amended Complaint.**

Subsequently, Plaintiffs filed their first amended complaint in this action on January 8, 2025, naming the Lorain County Board of Commissioners ("Board of Commissioners") as opposed to Lorain County. (First Amended Complaint filed January 8, 2025 {"FAC"}.) They again named Auditor Snodgrass, and added the Land Bank as well as the Lorain County Port Authority as additional Defendants. (FAC, Caption.) The sum and substance of the averments in the amended complaint, however, had not changed. In response, Defendants again moved to dismiss the amended complaint. Defendants set forth the exceptionally sparse instances of allegations made against the Board of Commissioners and Auditor Snodgrass, to demonstrate to this Court the dearth of allegations made against these two defendants, conveying that it was still virtually impossible for either of them to identify the purported wrongdoing they were responsible for. (Defendants Lorain County Board of Commissioners and Craig Snodgrass's Motion to Dismiss filed February 14, 2025, pp. 5-7.)

C. **The Second Amended Complaint.**

Plaintiffs have now unveiled their Second Amended Complaint ("SAC"), filed on May 16, 2025. This complaint proposes a markedly different theory for how the defendants purportedly engaged in their wretched takings in violation of the Fifth Amendment to the U.S. Constitution—which they are claimed to have engaged in for decades—as alleged in the first two paragraphs of every complaint they have filed in this matter. Gone is the "information and belief" Plaintiffs relied on to aver that the Land Bank sold their previously owned property for a price above the unpaid tax delinquency. In its place is the factual averment—verified by public records—that the Land Bank sold the property for $5,000.00, a price that equates to over $10,000.00 *less than* the Plaintiffs' unpaid tax delinquency. (SAC, ¶ 43.) Also gone is Plaintiffs' allegation that a taking

4

occurred when the land bank sold the property and kept the purported surplus, rather than remitting it to the Plaintiffs. In its place is the averment that "[a] taking in violation of *Tyler* occurred when the County took the entire property on behalf of the State and then transferred it to the Land Bank without providing Betsy and Inez with the difference between the taxes they owed and the property's fair market value." (SAC, ¶ 44.)

### III.  LAW AND ARGUMENT

#### A.  Standard of Review.

In C*onley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the United States Supreme Court suggested the common premise that a court should grant a motion to dismiss if it appears beyond doubt that a plaintiff cannot set forth factual assertions in support of his or her claim that would entitle him or her to relief. *Id.* at 45-46. But the Court honed this standard in subsequent cases. In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court observed that a complaint must contain short, plain statement of facts showing that the plaintiff is entitled to relief in accordance with Fed. R. Civ. P. 8(a)(2), in order to provide fair notice to a defendant of the basis for the claim. Id. at 555. But it clarified that labels and conclusions are not sufficient to constitute such a statement of facts to survive a motion to dismiss, citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) to note the premise that where a plaintiff recites legal conclusions and represents them as factual allegations, courts do not need to accept them as true. *Twombly*, 550 U.S. at 555.

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), another case where the United States Supreme Court further developed its analysis on the sufficiency of a complaint's allegations, is arguably more relevant to this case since it also involved the plaintiff's claim of a violation of a clearly established right. Id. at 668, 677. In *Iqbal*, the Court required a

complaint that would survive a motion to dismiss to be plausible on its face, explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678, citing *Twombly*, 550 U.S. at 555. It further noted an actionable claim must move beyond a mere possibility that a defendant has acted wrongfully. *Iqbal,* 556 U.S. at 678.

> **B.** **Plaintiffs Have Not Stated Sufficient Facts Providing that the Lorain County Board of Commissioners Has Engaged in a Taking of Private Property for Public Use Without Just Compensation.**
>
> **1.** **Plaintiffs Have Not Stated with Any Specificity What Actions the Board of Commissioners Took Overall.**

Plaintiffs have named the Lorain County Board of Commissioners in their first and second amended complaints for the sole purpose of ascribing all conduct that occurred in this matter to one party, which they have identified as Lorain County. It appears that Plaintiffs have substituted the Lorain County Board of Commissioners as a party for the sole purpose of defeating the argument that a suit against "Lorain County" is a legal nullity because "Lorain County" is not a sui juris entity capable of being sued. Plaintiffs virtually state as much in averring that the "Lorain County Board of Commissioners is responsible for Lorain County" (SAC, ¶ 12.)

The Board of Commissioners detailed in its motion to dismiss Plaintiffs' first amended complaint the scarcity of the allegations specifically implicating it in any wrongdoing. Those same arguments apply within this motion to dismiss Plaintiffs' second amended complaint; therefore the Board of Commissioners reasserts them here.

> **2**. **Plaintiffs Specifically Have Not Stated How the Board of Commissioners Effected a Taking In Their New Theory of Recovery**.

Plaintiffs now claim the alleged taking occurred when the "County" took their property, "on behalf of the state," and transferred it to the Land Bank. But the allegations in Plaintiff's

6

complaint do not even bear out this proposed transaction. O.R.C. 5723.01(A) provides that "[e]very tract of land and town lot, which, pursuant to foreclosure proceedings under section 323.25, sections 323.65 to 323.79, or section 5721.18 of the Revised Code, has been advertised and offered for sale on two separate occasions, not less than two weeks apart, and not sold for want of bidders, shall be forfeited to the state or to a political subdivision, school district, or county land reutilization corporation pursuant to division (A)(3) of this section." It is clear from this statutory language—and moreover conceded by Plaintiffs—that the property, having not sold either time it was put out for auction, was required to be forfeited to the state, to a political subdivision, to a school district, or to a county land reutilization corporation. In this case, as Plaintiffs have conceded through their own exhibit to their complaint, the property was forfeited to the State of Ohio. (SAC, Exhibit 10, pp. 7-8.) Subsection (C) of O.R.C. 5723.01 makes clear that a political subdivision, a school district, or a county land reutilization corporation seeking to have property forfeited to them must first file a petition seeking forfeiture of the property. O.R.C. 5723.01(C). There is nothing in the record indicating that any party filed a petition seeking forfeiture of the property; therefore, Ohio law mandated that the property be forfeited to the state.

      First, the Board of Commissioners did nothing with the property. Second, it is clear from the entirety of the record in this matter that the property was not transferred by any county entity on behalf of the State of Ohio to the land bank. This suggestion is simply not borne out by the facts submitted by Plaintiffs themselves. In the absence of any accurate allegations that even tangentially would give rise to a takings claim, it is impossible for this Court to discern what the Plaintiffs are actually alleging. For these reasons alone, this Court should dismiss Plaintiffs' second amended complaint against the Board of Commissioners.

      **C.**    **There Are No Stated Facts Against Defendant Craig Snodgrass Constituting a Claim That Would Warrant Relief to the Plaintiffs.**

Plaintiffs have ascribed an insulting dearth of characterization to Auditor Snodgrass throughout the last six months of this litigation. Not only have they expressed few if any allegations against him or his office in any of their three complaints, they also continue to label him an employee of Lorain County despite being advised in his previously filed motion to dismiss that he is a separately elected official pursuant to O.R.C. Chapter 319. Again, all of the arguments made in Auditor Snodgrass's motion to dismiss Plaintiffs' first amended complaint also apply within this motion to dismiss; therefore Auditor Snodgrass reasserts them here.

    **D.**    **Plaintiffs Have Failed to State Any Set of Facts That Constitute a Takings Claim.**

The Fifth Amendment Takings Clause provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V. It is settled law that a government seeking to satisfy a tax debt engages in an impermissible taking when it acquires more property than it is owed. *Howard v. Macomb Cnty.*, 133 F.4th 566,569 (6th Cir. 2025); *Pung v. Kopke*, 2025 U.S. App. LEXIS 2149 at *11 (6th Cir. Jan. 28, 2025). *Tyler, supra*, has made it clear that while governments have the power sell real property in order to satisfy a tax delinquency, it is not permitted to keep the surplus over and above what was acquired in satisfaction of the delinquency. *Id.* at 638-639. However, in *Freed v. Thomas,* 81 F.4th 655 (6th Cir. 2023), the Sixth Circuit Court of Appeals rejected claims that such property owners are entitled to recover the fair market value of property which may be over and above the price actually received for the property. The Court stated as follows:

> Freed asserts though that he is entitled to an additional $56,800 because the purported fair market value of the property was $98,800 and the property sold for only $42,000. However, neither this court nor the Supreme Court has ever held that a plaintiff whose property is foreclosed and sold at public auction for failure to pay taxes is entitled to recoup the fair market value of the property. *Cf. United States v. Davis,* 815 F.3d 253, 260 (6th Cir. 2016) (holding that the government does not

8

violate the Fifth Amendment by selling a property at a public auction, even if the property sells for less than fair market value). Furthermore, **the best evidence for a foreclosed property's value is the property's sales price, not what it was worth before the foreclosure.** *See BFP v. Resol. Tr. Corp.,* 511 U.S. 531, 548-49, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994).

The Michigan Supreme Court, in addressing this exact issue, held that awarding the fair market value of a property instead of the price obtained at a public tax foreclosure sale "would run contrary to the general principle that just compensation is measured by the value of the property taken" and would "not only… [take] money away from the public" but would also allow plaintiffs to "benefit from their tax delinquency." *Rafaeli, LLC v. Oakland County,* 505 Mich. 429, 952 N.W. 2d 434, 465-66 (Mich. 2020). Freed is entitled to the amount of the sale above his debt and no more. *See Hall v. Meisner,* 51 f.4th 185, 194 (6th Cir. 2022) (explaining the longstanding principle that following a public sale, a debtor is "entitled to any surplus proceeds form the sale, which represented the value of the equitable title thus extinguished" (citing *Resol. Tr. Corp.,* 511 U.S. at 541)). This is precisely what the district court held, and Freed's Fifth Amendment takings argument is therefore meritless.

*Id.* at 658-59 (emphasis added).

In this case, Plaintiffs themselves have provided evidence in their complaint that their property sold an amount of money over $10,000 less than their unpaid tax delinquency. And yet they *still* claim that they are entitled to an award of the difference between the fair market value of the property and the tax delinquency. This position does not just run contrary to the general principle that just compensation is measured by the value of the property taken. It invents an entirely new concept that just compensation is whatever a property owner wants it to be. This is specifically true here because Plaintiffs have suggested valuations of the property from this year, as opposed to the time it was forfeited. The most accurate valuation of the property comes from the result of the public auctions, of which two were held. Neither auction saw anyone bidding on the property, effectively establishing its value at zero. The next most accurate value of the property is the Land Bank sale of the property for $5,000.00. Simply put, there was no taking here. This case does not necessarily even get to the principles referenced in *Freed*, concerning the entitlement

to recoup the surplus of the fair market value over a tax delinquency as opposed to the sale price, because here there was no surplus. Two failed public auctions demonstrated that Plaintiffs' property had no value when it was forfeited to the state, and a value of only $5,000.00 when it was sold. Plaintiffs' takings claim simply falls flat on its face in light of the legal principles referenced above and the specific facts of this case.

### E. Plaintiffs Have Failed to State Any Set of Facts That Constitute an Eighth Amendment Violation Claim.

"The Eighth Amendment protects 'against excessive fines [and] guards against abuses of [the] government's punitive or criminal-law-enforcement authority.'" *Freed* at 659, quoting *Timbs v. Indiana*, 586 U.S. 146, 149, 139 S. Ct. 682, 686, 203 L. Ed. 2d 11 (2019). However, fines are a punitive measure, whereas statutory tax foreclosure processes are not punitive, and therefore cannot constitute a fine. *Freed* at 658, citing *Hall v Minser*, 51 F.4th 185, 196-97 (6th Cir. 2022), cert. denied, 142 S.Ct 2639 (2023). Moreover, even when a forfeiture process purports to take the whole surplus from a tax foreclosure sale, that action does not violate the Eight Amendment protection against excessive fines. *Freed* at 659.

Plaintiffs can make exactly no claim that they have been subjected to an Eighth Amendment violation. They themselves averred that they do not challenge the foreclosure judgment as to their property. (SAC, ¶ 45.) And given that there was no possibility for them to receive any kind of surplus as a result of the sale of the forfeited property, Plaintiffs have set forth exactly no factual assertions in support of their claim that would entitle them to relief, as contemplated in *Conley, supra.*

### IV. CONCLUSION

Plaintiffs have tried three times, and failed three times, to set forth anything that even resembles a viable cause of action in either the Fifth Amendment or the Eighth Amendment,

against any of the defendants in this matter. This latest attempt poses an incongruous theory that was wholly dispelled by the Sixth Circuit in the last few years. This Honorable Court should not provide an occasion for Plaintiffs to make a fourth attempt. On the contrary, Defendants the Lorain County Board of Commissioners and Auditor Craig Snodgrass respectfully but firmly encourage this Court to dismiss Plaintiffs' complaint with prejudice.

Respectfully submitted,

**ANTHONY CILLO (62497)**
Prosecuting Attorney
Lorain County, Ohio


/s/ **Leigh S. Prugh**
Leigh S. Prugh (72852)
Assistant Prosecuting Attorney
225 Court Street, 3rd Floor
Elyria, OH 44035
T. (440) 329-5736
F. (440) 329-5430
leigh.prugh@lcprosecutor.org
*Counsel for the Lorain County Board of Commissioners and Craig Snodgrass*

## CERTIFICATE OF SERVICE AND LOCAL RULE 7.1(f) CERTIFICATION

I certify that on June 20, 2025, I electronically filed a true and accurate copy of the foregoing *Motion to Dismiss Plaintiffs' Second Amended Complaint* to be served on all parties via the Court's e-distribution system. I further certify that this case has not yet been assigned to a track, and therefore the following Memorandum in Support adheres to the page limitations set forth in Loc.R. 7.1(f) for unassigned cases.

/s/ **Leigh S. Prugh**
Leigh S. Prugh